# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Brief February 5, 2013

## STATE OF TENNESSEE v. LEWIS GREEN

**Direct Appeal from the Criminal Court for Shelby County**
**No. 11-04991-96    Lee V. Coffee, Judge**
**W-1100692**

---

**No. W2011-02593-CCA-R3-CD  -  Filed March 28, 2013**

---

The defendant, Lewis Green, appeals the trial court's decision to deny his request for alternative sentencing and judicial diversion.  The defendant pled guilty to seven counts of possession of cocaine with intent to sell and one count of possession of marijuana with intent sell.  He received an effective five-year sentence for the convictions.  Following a hearing, the trial court ordered that the sentences be served in incarceration and denied the defendant's request for judicial diversion.  Following review of the record, we affirm the sentencing decisions of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the Court, in which ALAN E. GLENN and CAMILLE R. MCMULLEN, JJ., joined.

Sean H. Muizers, Memphis, Tennessee, for the appellant, Lewis Green.

Robert E. Cooper, Jr., Attorney General and Reporter; Jeffrey D. Zentner, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Ann Schiller, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### Procedural History and Factual Background

The relevant facts underlying the defendant's convictions, as recited by the State at the guilty plea hearing, are as follows:

Under Indictment 11-04991, that on February 24th, 2011, at 679 North

Holmes located here in Shelby County that the defendant did meet with an undercover officer with the Memphis Police Department and did so [sell] point one total net weight grams of what tested positive for cocaine.

Under Indictment No. 11-04992, on February 25th, 2011, also at that same location, 679 North Holmes located here in Shelby County, Tennessee, the defendant did meet with an undercover officer of the Memphis Police Department and did sell the undercover officer point six total net weight grams of a substance testing positive for cocaine.

Under Indictment No. 11-04993, on March 8th, 2011, 679 North Holmes located here in Shelby County, the defendant did meet with an undercover officer from the Memphis Police Department and did sell him point one total net grams of cocaine which did test positive.

Under Indictment NO. 11-04994, on March 9th, 2011, at 679 North Holmes located here in Shelby County, the defendant did sell an undercover officer with the Memphis Police Department point four total net weight grams of a substance testing positive for cocaine.

Indictment No. 11-04995, on March 18th, at 679 North Holmes located here in Shelby County, the defendant did meet with an undercover officer of the Memphis Police Department and did sell him point two total net weight grams of cocaine.

Under Indictment No. 11-04996, on March 18th, at 4:26 P.M., that would be approximately an hour and a half - no, sir, an hour and six minutes after he had sold him cocaine from the indictment ending in 995. The defendant did meet with an undercover officer for the Memphis Police Department at 679 North Holmes located here in Shelby County and did sell the undercover officer point five total net weight grams of cocaine.

Under Information W1100692, the defendant did, on May 17th, 2011, . . . was found to be in possession cocaine - of a substance testing positive for cocaine. The detectives were executing a search warrant, made entry into the residence of 679 North Holmes, for location of crack cocaine. They used a canine officer by the name of Buddy who did locate mari[j]uana inside of the residence - and cocaine. The cocaine did test positive for cocaine weighing twenty point three two grams total gram weight; and the mari[j]uana did test positive for THC weighing a hundred fifty-six total gram weight.

After the recitation by the State, the defendant stipulated that those would have been the facts had the case gone to trial.

On October 27, 2011, the defendant petitioned the court to accept his guilty pleas to seven counts of possession of cocaine with intent to sell and one count of possession of marijuana with intent to sell. The agreement reflected that the defendant would be asking the court for diversion or an alternative sentence and that the State had no opposition to concurrent sentencing. The defendant was voir dired by the trial court and acknowledged that he was entering the agreement voluntarily. The court reviewed the constitutional right which the defendant would be waiving by entering the guilty pleas, as well the possible sentence ranges. The court then proceeded to explain the diversion process to the defendant. The court, in its explanation, made clear to the defendant that diversion was not guaranteed and, further, that he could face a sentence of incarceration. The defendant chose to proceed with entry of the pleas.

At the sentencing hearing, held immediately after acceptance of the pleas, the defendant testified that he was thirty-one years old, that he had never been arrested, and that he had five children between the ages of eleven and two. The defendant stated that he had worked in various janitorial positions, but he was unable to get enough hours at his job to cover his expenses. According to the defendant, he started selling drugs to catch up bills and support his children. The defendant testified that he had "just made one mistake" and that he was not a bad person. He stated that he had been unable to find another job at the time, but if he was released, he was now more motivated to find a better job. He acknowledged that he had stopped selling drugs because he was arrested; however, the defendant insisted that he would have stopped anyway if he had been able to get a better job.

The defendant specifically admitted selling the drugs on the days charged in the indictments, as well as on other days in the time-period covered by the various charges. He also acknowledged that he had smoked marijuana in the past. Nonetheless, the defendant was adamant that he would never sell drugs again and that he could comply with the terms of any sentence imposed. He stated that he would be staying with his aunt if he was granted diversion or an alternative sentence.

After listening to the testimony and reviewing the evidence, the trial court sentenced the defendant to five years, as a Range I offender, for each of the cocaine charges and to two years for the marijuana charge. The court ordered that the sentences be served concurrently for an effective five-year sentence. The trial court denied the defendant's request for diversion, as well an any alternative sentence, and ordered that the sentence be served in incarceration. This timely appeal followed.

**Analysis**

On appeal, the defendant contends that: (1) the trial court erred in denying his request for alternative sentencing; and (2) the trial court erred in denying judicial diversion. We disagree.

The trial court, in very extensive oral findings, noted the basis of its sentencing decisions:

> This court, in evaluating this petition under Tennessee Code Annotated 40-35-210, has considered the facts and circumstances of this offense. The court has considered statements that [the defendant] has made on his own behalf. The court has considered statements and arguments of counsel. The court has also considered the nature and the characteristics of the criminal conduct involved.
>
> This court has considered those principles of sentencing as reflecting in 40-35-102 and 103.
>
> The court has considered all things that could be mitigated and enhancing under 40-35-113 and 114.
>
> This court has considered the statistical data provided by the Supreme Court/Administrative Office of the Court regarding sentencing practices around the state of Tennessee.
>
> And the court has also considered [the defendant's] potential for rehabilitation and/or treatment or lack thereof.
>
> 40-35-113, [defense counsel] asked the court to consider that the defendant was motivated by a desire to provide necessities for the defendant's family and/or the defendant's self. [The defendant] was motivated by greed. He was motivated by profit. [The defendant] had a job; and he says that things were a little bit tough - things were a little bit tight - and he was trying to get extra money selling drugs for his kids and to pay bills; but he was working. He was employed. He did have the ability to pay - to raise money, but he chose to take a shortcut. He said he was making two hundred/two hundred fifty dollars a month - not that much. So, the court will find and give very slight weight to the fact that he was, quote, motivated by a desire to provide necessities for his family.

-4-

The court does not find that his conduct did not cause nor threaten serious bodily injury. Tennessee cases are crystal clear that when a person engages in selling cocaine and other drugs; that that, in and of itself is a dangerous offense; that it is threatening to cause bodily injury - to cause harm to folks; that, in fact, buy drugs in the community.

This court finds that [the defendant] has engaged in conduct - criminal behavior in addition to those necessary to establish the appropriate range and gives great weigh to that enhancement factor. [The defendant] was selling drugs for at least four months before he was finally arrested and taken off the street. I don't know, and I don't believe that when he was arrested on May 17th that he, all of a sudden . . . stopped selling drugs. He had all of these other cases that were pending that were committed from February through March - arrested on May 17th. He made a bond on that case. The bond was reduced. And I do not believe that on May 17th 2011, after [the defendant] got arrested, that he went back home and said, "I'm done with being a drug seller. I'm going to stop." I do not believe that that, in fact, happened.

This court does find that [the defendant] sold cocaine for an extended period of time. He was identified by concerned citizens or maybe by one of his drug users - somebody working on the case - don't know. Organized crime has said, "[the defendant] is a dope seller, and this is where he lives. You need to go get a search warrant for that house," and based on that, a neutral detached magistrate signed a search warrant to have a warrant executed on [the defendant's] house. [The defendant] was found in possession of digital scales - found in possession of one hundred fifty-six grams of mari[j]uana, twenty point three two grams of cocaine. That's a lot of cocaine. That's almost an ounce of cocaine that was located when he was arrested on May 17th, 2011; and the court has, in fact, considered the facts and circumstances of all these arrests and finds that these are particularly troublesome.

This defendant had no hesitations of committing a crime in which the risk to human life was high. Selling drugs in this community, as the court indicated earlier, is a dangerous offense; and selling cocaine is a crime in which the risk to human life is, in fact, high; and the court does give great weight to that finding as an enhancing factor. He did not commit these offenses while on bond. He committed a bunch of offenses; was arrested, and then was subsequently indicted for these other six felony offenses; but he has continued to sell drugs for a long period of time in this community. He has no other arrests that were able to be located by the Tennessee Board of Probation

and Parole. He's been certified as being diversion eligible.

His eligibility for diversion does mean that he is entitled to diversion.

His eligibility for probation does not mean that he is entitled to probation.

It is still [the defendant's] obligation - his burden to prove that he is, in fact, a suitable candidate for probation.

In evaluating his request for diversion, the court has considered all those factors under Tennessee Code Annotated 40-35-313.

The court has considered whether or not [the defendant] is amenable to correction. [The defendant] committed multiple offenses over a four-month period of time; and this court finds that the number of offenses in this case would indicate that [the defendant] is not necessarily amenable to correction. This is not, as [the defendant] told the court, that he made one mistake and that he was careless. This is not one mistake. This is seven convictions - seven offenses for which he has been arrested - has been indicted - has been charged - has pled guilty; and there's no telling how many other times [the defendant] sold cocaine over that three or four month period of time or longer. This is not one mistake. This is not an isolated incident where somebody has a hiccup and says, "I stubbed my toe, and I lost my moral fiber - my moral compass, but I'm doing better." This is a continuous continuing sale of cocaine in this community in which people pointed him out as a dope seller - a living, breathing dope seller in this community; and the nature of the offenses were so severe that a judge set a hundred and sixty thousand dollar bond on a drug seller. And this court does find that because of the number of offenses, that he does not appear to be amendable to correction because he continued to commit these offenses over months of time.

This court also finds that the circumstances surrounding these offenses are, in fact, aggravated. These are seven different sales for possession of drugs with intent to sell.

One of these is a B felony. The recommendation is that he serve five years in prison on the information because of the twenty grams of cocaine. Had he pled guilty - had he gone to trial and been convicted of what he was charged with, under Tennessee Law, B felonies are not probateable [sic] - that

particular B felony, for possessing that amount of cocaine - and he would be presumed not to be a suitable candidate for probation on a B felony, twenty-some grams of cocaine. And the court does consider the facts and circumstances of the offense, not just the offense for which he has pled guilty.

He has no criminal record. He has not been convicted - has not been arrested for anything, and that weighs in his favor.

His social history is not good. [The defendant] told the court that he smoke mari[j]uana - not that often, but he does admit that he smoked mari[j]uana . . . . And his social history is not good. He does not have a high school diploma - dropped out of school in the tenth grade, so social history is not good. I do not have any information about [the defendant's] physical or mental health. He would appear to be in fairly good physical health - would appear to be in good mental health, and that weighs in his favor.

This court has considered the deterrent value as to whether or not deterrents in this case are particularly important, not only for [the defendant] but other folks that are similarly situated. When you look at - when this court considers deterrence under Hooper . . . [,] a 2000 Tennessee Supreme Court opinion, this court does find that selling cocaine is increasingly prevalent in this city, in this county, in this community and the state of Tennessee as a whole. Drugs, guns, and gangs are the three factors that make Memphis/Shelby County, Tennessee, the second most dangerous metropolitan area in this country . . . and that weighs heavily against [the defendant].

This court also finds that this is an intentional act. These are knowing acts, and they were done for one reason and one reason only; and that was to make money. He was selling drugs for profit; and the court does hold that against [the defendant] also.

This case has not received any substantial publicity. That weighs in his favor; but he was, in fact, assisting other people in the commission of this criminal enterprise.

He told the court that he knows the nickname or maybe the last name of the drug supplier; and this court does find that he was, in fact, helping other folks to sell this poison in this community.

And this court also finds that the defendant has previously engaged in

similar conduct regardless of whether that conduct ended or resulted in a conviction or not. He was selling drugs for four or five months and continued to resupply himself. So, under all the facts of Hooper - for those five factors, [the defendant] fails under the terms of consideration, and the court holds that against [the defendant].

Lastly, the court has to consider whether or not diversion is in the best interest of this community as well as the accused. [The defendant] says he wants to take care of his children. He wants to be better. But this is a case where people in that community - people in this community have told police, "We've got a drug dealer over here. Will you please do something about taking this drug dealer off the streets - over on Holmes Street." To send [the defendant] back out to that community, and everybody looks at [the defendant], and he goes out, and his chest is out, and he's walking around strutting like a peacock, and the community is going, "My God, this man was selling drugs for months, and some judge put him on diversion or probation. Let me start selling drugs, and maybe I can be lucky and get arrested also." And it is not in the best interest of this community; it is not in the best interest of [the defendant] to put him on diversion or to grant him an alternative sentence.

And for all of those reasons, as indicated earlier, when the court has considered - and the court has considered all those seven factors pursuant to State versus Parker . . . [a] 1996 Court of Criminal Appeals opinion - under all of those factors, only two of those factors possibly, arguably, weigh in [the defendant's] favor. The other five weigh heavily against [the defendant].

And this court had to consider the multiplicity of offenses committed over a short period of time. And if the court finds that there are multiple offenses - and these are seven convictions that [the defendant] pled guilty to that occurred in less than four months; and the court does find that these repeated sales of cocaine is excessive - it is exaggerated - and that based on the multiplicity of these offenses, that factor, in and of itself, outweighs any arguments for alternative sentencing. That's State versus Zeolia . . . [a] 1996 Court of Criminal Appeals opinion. Only one case - just the one information case, the state made a recommendation that the defendant serve five years on that case; and that was not even taken into consideration.

It may have had - I don't know - taken into consideration all of the other cases that the defendant has before the court. But this court having found the

-8-

presence of aggravating factors, and having found - having given slight weight to the fact that the defendant was motivated by a desire to provide necessities for himself or his family, the court finds that [the defendant] is a standard Range-I offender on these seven felony convictions; and the court finds that those enhancing factors, as the court has indicated, do outweigh any mitigation beyond any stretch of the imagination; that they are - they do outweigh any mitigation; . . . and the court, in light of the fact [the defendant] was offered a five-year sentence on this C felony information that is actually a B felony conduct, will set his punishment . . . at five years confinement in the Shelby County Division of Correction as a standard Range-I offender. This court will impose a fine of two thousand dollars on the cocaine cases.

On the mari[j]uana case, the second count of this indictment, this court will set his punishment at two years confinement in the Shelby County Division of Correction as a standard Range-I offender, a two-thousand-dollar fine plus cost on that conviction. All seven - all eight of these convictions are ordered to be served concurrently with each other, making this one effective sentence of five years in prison; fine of sixteen thousand dollars plus court costs.

This court has evaluated this petition for diversion under Tennessee Code Annotated 40-35-313 and has concluded that [the defendant] is not a suitable candidate for diversion.

This court has also evaluated his petition for alternative sentencing under Tennessee Code Annotated 40-35-210 and 40-35-102 and 103. And this court concludes that it is not in the best interest of this community to place [the defendant] on probation. This is a real live breathing walking drug seller. It is not in the best interest of this community to place him on probation for his repeated sales of cocaine; for repeatedly going out and getting more cocaine. And when he was ultimately arrested in May, he has over twenty grams of cocaine - almost half a pound of mari[j]uana that's he's resupplied himself with and is out selling this stuff in this community openly, notoriously, and without any regard to the damage that he's doing to folks in this community.

    . . . .

For all those reason, the court finds that [the defendant's] request for alternative sentencing is not well taken; and this court will order that mittimus and judgment be entered and executed at this time.

**I. Alternative Sentencing**

The defendant contends that the trial court erred in denying him an alternative sentence because the record "clearly shows" that the trial court failed to comply with the statutory sentencing directives and improperly applied the principles of sentencing in ordering a sentence of confinement. As an initial matter, on appeal, the defendant asserts that review of his sentencing complaints should be reviewed de novo. However, that assertions ignores the recently adopted new standard of review for sentencing decisions. *See State v. Renee Bise*, 380 S.W.3d 682, 706 (Tenn. 2012). As such the defendant's contention is not well taken.

We now review a trial court's sentencing determinations under an abuse of discretion standard, "granting a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." *Id*. This abuse of discretion standard also applies to questions related to probation or any other alternative sentence. *State v. Christine Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012).

In determining the proper sentence, the trial court must consider (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) any mitigating or statutory enhancement factors; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; (7) any statement the defendant made on his own behalf; and (8) the potential for rehabilitation or treatment. T.C.A. § 40-35-102, -103, -210 (2010).

Under our revised Tennessee sentencing scheme, a defendant is no longer presumed to be a favorable candidate for alternative sentencing. *State v. Carter*, 254 S.W.3d 335, 347 (Tenn. 2008) (citing T.C.A. § 40-35-102(6)). Instead, a defendant who is not within the "parameters of subdivision (5) [of Tennessee Code Annotated section 40-35-102], and who is an especially mitigated or standard offender convicted of a Class C, D or E felony, should be considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary." *Id*. (footnote omitted). Additionally, we note that a trial court is "not bound" by the advisory sentencing guidelines; rather, it "shall consider" them. T.C.A. § 40-35-102(6) (emphasis added).

Subject to certain exceptions, a defendant is eligible for probation if the sentence imposed on the defendant is ten years or less. T.C.A. § 40-35-303(a). A defendant is not, however, automatically entitled to probation as a matter of law. The burden is upon the defendant to show that he is a suitable candidate for probation. *Id*. at 40-35-301(b); *see also*

*State v. Goode*, 956 S.W.2d 521, 527 (Tenn. Crim. App. 1997); *State v. Boggs*, 932 S.W.2d 467, 477 (Tenn. Crim. App. 1996). In order to meet this burden, the defendant "must demonstrate that probation will 'subserve the ends of justice and the best interest of both the public and the defendant.'" *State v. Bingham*, 910 S.W.2d 448, 456 (Tenn. Crim. App. 1995), overruled on other grounds, *State v. Hooper*, 29 S.W.3d 1, 9 (Tenn. 2000), (quoting *State v. Dykes*, 803 S.W.2d 250, 259 (Tenn. Crim. App. 1990)).

There is no bright line rule for determining when a defendant should be granted probation. *Bingham*, 910 S.W.2d at 456. Every sentencing decision necessarily requires a case-by-case analysis. *Id.* Factors to be considered include the circumstances surrounding the offense, the defendant's criminal record, the defendant's social history and present condition, the need for deterrence, and the best interest of the defendant and the public. *Goode*, 956 S.W.2d at 527. Also relevant is whether a sentence of probation would unduly depreciate the seriousness of the offense. *State v. Davis*, 940 S.W.2d 558, 559 (Tenn. 1997); *Bingham*, 910 S.W.2d at 456. Denial of probation may be based solely upon the circumstances of the offense when they are of such a nature as to outweigh all other factors favoring probation. *Bingham*, 910 S.W.2d at 456.

A trial court may deny alternative sentencing and sentence a defendant to confinement based on any one of the following considerations which establish "evidence to the contrary" to rebut a defendant's status as a "favorable candidate" for alternative sentencing:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
>
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
>
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

T.C.A. § 40-35-103(1). In choosing among possible sentencing alternatives, the trial court should also consider the potential for the defendant's rehabilitation or treatment. T.C.A. § 40-35-103(5); *State v. Dowdy*, 894 S.W.2d 301, 305 (Tenn. Crim. App. 1994). The trial court may consider a defendant's untruthfulness and lack of candor as they relate to the potential for rehabilitation. *State v. Nunley*, 22 S.W.3d 282, 289 (Tenn. Crim. App. 1999); *see also Dowdy*, 894 S.W.2d at 305-06. Finally, the court may also consider the mitigating and enhancing factors set forth in Tennessee Code Annotated sections 40-35-113 and 40-35-114. T.C.A. § 40-35-210(b)(5).

Review of the record in this case reveals that the defendant's argument that the trial court failed to consider and appropriately apply the purposes and principals of the sentencing act in reaching its decision to deny alternative sentencing is wholly misplaced. A reading of the trial court's oral findings wholly belies that contention. The trial court explicitly set forth its reasons for imposing the within-range sentence and considered each of the enumerated factors in great detail. We conclude that the sentence does in fact comply with the purposes and principals of the sentencing statutes.

On the record, the trial court noted factors weighing for and against the defendant in reaching the sentencing decision. The court considered the lack of a prior criminal history and the defendant's health as positive factors for him. However, the court explicitly stated that these positive factors were outweighed by the defendant's poor social history, the circumstances of the offenses, the deterrence value of denying alternative sentencing, and the defendant's poor potential for rehabilitation.

The trial court relied heavily upon the fact that this had been an ongoing criminal operation, occurring over at least a four-month period, during which the defendant repeatedly sold a dangerous drug into the community. When the defendant was arrested, he was in possession of a large quantity of cocaine and marijuana which presumably would also be introduced into the community. The trial court specifically considered the dangerous effects of drugs and noted that drugs had contributed to the city of Memphis becoming one of the most dangerous in the nation. The court was very concerned about the message it would send to the community and other potential drug dealers if the defendant was granted an alternative sentence. The court concluded that the number of offenses itself outweighed any factors favoring the grant of an alternative decision.

Our review of the record reveals no abuse of discretion in reaching the determination that the defendant was not a suitable candidate for an alternative sentence of either probation or community corrections. No relief is warranted on this record.

**II. Judicial Diversion**

Next, the defendant contends that the trial court erred in denying him judicial diversion. Specifically, he asserts that public policy considerations dictate that his request should have been granted. He contends that to hold otherwise would "be authorizing law enforcement officials to risk the safety of the general public in order to deprive offenders of the chance to take advantage of the Judicial Diversion program and change their lives in a manner that may benefit society." He bases this contention on the fact that he committed his first offense in February but was not arrested and charged until May and that he committed multiple crimes in the interim.

Judicial diversion is a legislative largess that affords certain types of convicted defendants the opportunity to avoid having a permanent criminal record provided certain conditions are met. T.C.A. § 40-35-313(a). We review a trial court's decision to deny judicial diversion under an abuse of discretion standard. *State v. Electroplating, Inc.*, 990 S.W.2d 211, 229 (Tenn. Crim. App. 1998). "[T]his Court will not interfere with the refusal of the trial court to grant judicial diversion if there is any substantial evidence to support the refusal contained in the record." *State v. Parker*, 932 S.W.2d 945, 958 (Tenn. Crim. App. 1996) (internal quotation omitted). There is no presumption in favor of judicial diversion under section 40-35-313. *See Electroplating*, 990 S.W.2d at 228.

"In determining whether to grant judicial diversion, the trial court must consider[:] (a) the accused's amenability to correction, (b) the circumstances of the offense, (c) the accused's criminal record, (d) the accused's social history, (e) the accused's physical and mental health, (f) the deterrence value to the accused as well as others, and (g) whether judicial diversion will serve the interests of the public as well as the accused." *Id*. at 229. "[T]he record must reflect that the court has weighed all of the factors in reaching its determination," and "if the court has based its determination on only some of the factors, it must explain why these factors outweigh the others." *Id*. If a trial court fails in this duty, we may review the record to determine whether the trial court reached the correct result notwithstanding its failure to explain its reasoning. *See id*.[1]

Again, we conclude that no abuse of discretion is apparent in the decision to deny judicial diversion. The trial court was very explicit in its consideration of the factors and the importance it assigned to each. The trial court found that the defendant, because of his continual sale of drugs, was not amenable to correction. The court found that the

---

[1] Although not at issue in this case as the trial court did comply with these mandates, this court feels that these stringent requirements imposed on trial courts to evaluate and weigh each factor on the record may no longer be appropriate in light of the recent sea of change in the legal landscape concerning appellate review of virtually every aspect of sentencing. In *Bise* and *Caudle*, our supreme court made clear that primary responsibility for determining the appropriate sentence rests with trial courts and that their decisions are presumptively reasonable. Mistakes - even ones that in the past would have been deemed serious mistakes meriting reversal, such as the complete misapplication of an enhancement or mitigating factor - no longer serve to invalidate a defendant's in-range sentence so long as the trial court did not wholly depart from the principles and purposes of the sentencing act. *Bise*, 380 S.W.3d at 706. The stringent procedural requirements governing the judicial diversion process that are currently imposed on trial courts directly conflict with our duty, imposed by *Bise* and *Caudle*, to treat all in-range sentences imposed by trial courts as presumptively reasonable. Consequently, while courts should still consider the factors discussed in *Parker* and *Electroplating* when making a decision concerning diversion, a mere failure to expressly consider one or more of the factors or a failure to specify why some factors outweigh others is no longer, standing alone, grounds for reversal in our opinion.

circumstances of the offense were exaggerated in nature and that the interest of the public would not be served by allowing the defendant, a known drug dealer, to be placed on judicial diversion. While noting that the defendant had no criminal record, and appeared to be in good health, the court did not assigned these factors great weight because it felt that the continual nature of the ongoing criminal enterprise outweighed them. The court also weighed against the defendant a poor social history. Moreover, the court afforded great weight to the deterrence factor finding that to afford the defendant this boon would not send a proper message to the community.

We can discern no error in the trial court's analysis. The trial court amply explained on the record why diversion was not appropriate in this case. The defendant's issue affords him no relief.

## CONCLUSION

Based upon the foregoing, the sentencing determinations of the Shelby County Criminal Court are affirmed.

_____

JOHN EVERETT WILLIAMS, JUDGE